# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

PATRICK THURMOND,                )
                                 )
    Petitioner,                  )    NO. 3:06-1179
                                 )    JUDGE HAYNES
                                 )
                                 )
HOWARD CARLTON, Warden,          )
                                 )
    Respondent.                  )

## M E M O R A N D U M

Petitioner, Patrick Thurmond, filed this action under 28 U.S.C. § 2254 seeking to vacate his convictions for aggravated burglary, attempted rape, and aggravated sexual battery for which he ultimately received consecutive sentences totaling 50 years. Petitioner's pro se claims were that his enhanced sentences on two counts violated the Due Process Clause of the Fourteenth Amendment because the trial court lacked jurisdiction to impose an enhanced sentence under Tennessee's multiple rapist statute, as applied to Petitioner's aggravated rape conviction. Petitioner also asserted that this consecutive sentence violated his Fourteenth Amendment due process rights for lack of notice that upon a second violation of the aggravated rape offense statute, he would face enhanced punishment as a multiple rapist.

After a review of the pro se petition, the Court appointed the Federal Public Defender to represent Petitioner. In an amended petition,[1] Petitioner asserts the following claims: (1)

---

[1] The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005) ; Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supercedes the prior complaint. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986). Thus, the Court deems the amended petition to supercede the pro se petition. In a footnote, the amended petition incorporates by reference the claims in the pro se petition, but none of those claims are support by analysis and precedent. Thus, those claims are not considered by the Court.

ineffective assistance of his trial counsel for his failures: to call Petitioner and alibi witnesses at trial, to object to the admission of the victim's clothing, to object to a detective's hearsay testimony and to remove a prospective juror to whom Petitioner objected; (2) the trial court's admission of the photographic line-up violated his due process rights; (3) Petitioner was denied a unanimous jury verdict on counts 2, 3, and 4; (4) the trial court improperly applied Tenn. Code Ann. § 40-35-115(b) in imposing consecutive sentences; (5) the trial court improperly used the same facts to enhance Petitioner's punishment and to impose consecutive sentences; (6) the trial court used facts not found by the jury to impose an enhanced and consecutive sentence; (7) Petitioner lacked notice of an enhanced punishment in violation of his due process rights; (8) the trial court lacked authority to impose the multiple enhancement statute and did so in violation of Petitioner's due process rights; (9) the State's evidence was insufficient to support a conviction; (10) the trial court's denial of Petitioner's motion in limine to have other black males present for any in-court identification violated Petitioner's due process rights; (11) the in-court identification of Petitioner violated his due process rights; (12) the trial court's denial of Petitioner's request for the detective notes violated his right of confrontation and due process; (13) Petitioner was denied his right to a speedy trial; (14) trial court's refusal to give a jury instruction on identification evidence violated Petitioner's due process rights; (15) the State withheld or destroyed exculpatory evidence; and (16) the State presented false testimony at Petitioner's trial.

Respondent contends that the state courts' ruling on Petitioner's exhausted claims are reasonable and that virtually all of the Petitioner's other claims are procedurally defaulted either as claims not presented to the state courts as federal law claims or failure to present these claims to the state courts. In Respondent's view, these latter claims are now time barred upon

2

Tennessee law and Petitioner cannot demonstrate cause or prejudice to excuse these procedurally defaulted claims.

## I. Procedural History

Petitioner was tried before a jury on one count of aggravated burglary, two counts of aggravated rape, one count of attempted aggravated rape and one count of aggravated sexual battery. The jury convicted Petitioner on all counts. Petitioner was initially sentenced as follows: Count 1 (aggravated burglary): three years at 20%; Count 2 (aggravated rape): 20 years at 100%; Count 3 (aggravated rape): 20 years at 100%; Count 4 (attempted aggravated rape): ten years at 100%, Count 5 (aggravated sexual battery): ten years at 100%.[2] At sentencing, the trial court applied the multiple rapist statute, Tenn. Code Ann. § 40-35-203(e), and imposed consecutive sentences for Petitioner's aggravated rape on Counts 2 and 3 and for attempted aggravated rape, pursuant to Tenn. Code Ann. § 40-35-203(e). Thus, Petitioner had to serve 100% of his sentence on Counts 2, 3, 4 and 5 for an effective sentence of 50 years. Petitioner filed a motion for a new trial that was denied. On direct appeal, the Tennessee Court of Criminal Appeals affirmed his convictions, State v. Thurmond, 1999 WL 787524 (Tenn. Crim. App. Oct. 5, 1999), and the Tennessee Supreme Court denied his application for permission to appeal. Id.

Petitioner filed his post-conviction petition for which the state trial court appointed counsel to represent Petitioner. After an evidentiary hearing, the state trial court denied the post-conviction petition and on appeal, the Tennessee Court of Criminal Appeals affirmed. Thurmond v. State, 2006 WL 680924 (Tenn. Crim. App. Aug. 21, 2006). The Tennessee

---

[2]As discussed infra, the Tennessee Court of Criminal Appeals ruled that the multiple rapist statute did not apply to counts 4 and 5, and amended these sentences to ten years at 30%. Petitioner's effective 50 year sentence was amended to 40 years at 100% and 10 years at 30%.

3

Supreme Court denied Petitioner's application for review. Id.

On March 11, 2005, Petitioner filed a state habeas corpus petition in the Johnson County Criminal Court asserting claims that his sentence on counts 2 and 3 (aggravated rape); count 4 (attempted aggravated rape); and count 5 (aggravated sexual battery) were void because the multiple rapist statute, Tenn. Code Ann. § 40-35-203(e), did not apply to him. The state trial court found Petitioner to be a multiple rapist under the statute, but agreed that the multiple rapist statute could not be applied to count 5. Yet, the state trial court denied habeas corpus relief as inappropriate because that claim had to be presented to the convicting court in Davidson County. On appeal, the Tennessee Court of Criminal Appeals reversed and found that Petitioner's sentences on counts 4 and 5, attempted aggravated rape and aggravated sexual battery, were void because the Petitioner could not be classified as a multiple rapist for those offenses. Thurmond v. Carlton, 202 S.W.3d 131, 135 (Tenn. Ct. Crim. App. 2005). That Court affirmed Petitioner's convictions on counts 2 and 3. The Tennessee Supreme Court denied Petitioner's application for review. Id. On September 20, 2006 the sentencing trial court amended it judgments to remove the multiple rapist designations from counts 4 and 5. As a result, Petitioner's effective 50 year sentence now includes 40 years at 100% with 10 years at 30%.

Petitioner filed two additional unsuccessful habeas corpus petitions. Thurmond v. Carlton, 2007 WL 4335479 (Tenn. Ct. Crim. App. Dec. 12, 2007) (Petitioner's claim that the State failed to elect offenses for trial not cognizable in a state habeas action); Thurmond v. Carlton, 2008 WL 2001809 (Tenn. Ct. Crim. App. 2008) (Petitioner's claims about sentence enhancement, and lacking factual support for consecutive sentences deemed waived).

4

## II. Review of the State Record

The facts[3] underlying the Petitioner's convictions were set forth on his direct appeal by the Tennessee Court of Criminal Appeals as follows:

> On September 8, 1994, [the victim] worked as a housekeeper for the Drury Inn. At about 9:00 a.m., while cleaning the bathroom of a fourth-floor room, she heard a noise from the sleeping area. She found a man standing in the room's sleeping area. He wore a black shirt, long black shorts, black gloves, and held a pistol. The man tried to speak to [the victim], but she [did] not understand any English.
>
> When [the victim] tried to escape, [the petitioner] grabbed her by the shirt and put the gun to her head. Then, he threw her on the bed and put a pillowcase over her head. He raped her by performing cunnilingus and penetrating her vaginally with his penis. When he tried to put his penis in her mouth, she pushed him away. He also kissed her on her breasts. Trial testimony established that the attack lasted between one and 1 ½ hours. [The victim] later identified [the petitioner] as her attacker.
>
> The assault ceased when fellow Drury Inn staff members, Leah Adams and Lourdes Rivera, banged on the door and called out to [the victim]. [The petitioner] motioned for [the victim] to re-dress while he did the same. While Adams and Rivera tried to open the hotel room door, [the petitioner] opened the door and pushed his way between the women.
>
> Rivera chased [the petitioner] down the steps and around the building to a restaurant parking lot behind the hotel. When she accused him of raping [the victim], [the petitioner] replied, "she gave it to me." Rivera watched [the petitioner] get into a gray Chevrolet Corsica and memorized the license plate number as [the petitioner] drove away. Rivera related the number "099 JKB" to a hotel manager who, in turn, related it to police. When asked by Detective Danny Baxter for the number from memory, Rivera related the number "099 JKF." Baxter found that "099 JKF" was registered to the wrong type of car, but confirmed that "099 JKB" was the plate number of a Corsica registered in [the petitioner's] name.
>
> Earlier that morning, Lynn King, a housekeeper at nearby Days Inn saw a man, wearing all black clothing, roaming the halls of that hotel. She and other

---

[3]State appellate court opinion findings can constitute factual findings in a habeas action. Sumner v. Mata, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness 28 U.S.C. § 2254(d).

Case 3:06-cv-01179   Document 23   Filed 02/04/10   Page 5 of 35   PageID #: 120

housekeepers had seen the same man, in the same clothing, lingering around the hotel a couple of weeks earlier. King identified [the petitioner] as the man she saw.

1999 WL 787524 at **1-2. The state appellate courts' other factual findings will be set forth on Petitioner's specific claims.

### III. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412. In Bell v. Cone, 535 U.S 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role

6

in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

7

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

## A. Exhausted Claims

In his direct appeal, Petitioner's federal law claims challenges the sufficiency of the State's evidence trial court's denial of his motion in limine to have other African America males at counsel's table for the in-court identification and that he was denied his right to a speedy trial under state law that adopted Banker v. Wingo, 407 U.S. 514 (1972) (Docket Entry No. 21, Attachment there, Addendum No. 1, Document I at pp. 11, 12, and 17).

In his post-conviction appeal, the Petitioner claims were that "he received the ineffective assistance of counsel because his attorney failed to remove prospective jurors form the jury panel, failed to exclude physical evidence, failed to object to hearsay testimony, failed to call an alibi witness, and advised the petitioner not to testify." Thurmond, 2005 WL 680924 at *1. See also Docket Entry No. 21, Attachment thereto, Addendum 2, Document D. The Court first addresses these exhausted claims.

### 1. Denial of Motion In Limine

As to this claim on the lack of other Black males for the in-court identification of Petitioner, the Tennessee appellate court ruled on direct appeal as follows:

> Defendant assigns as error the trial court's denial of his request to have other African-American males present when witnesses made their in-court identifications. Defendant claims the victim failed to make any out-of-court

8

identification prior to trial. He further claims to have been the only African-American male in the courtroom when the witnesses made their in-court identifications. This, defendant argues, caused the in-court identification process to be unduly suggestive which gave rise to a substantial likelihood of misidentification. He advocates the application of the five-factor test established by the United States Supreme Court in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to reach a finding that the in-court identifications violated his due process rights.

First, we note that there is nothing in the record that indicates the trial court refused defendant the opportunity to have other African-American males in the courtroom at the time of the in-court identifications. The record reflects neither a written denial nor an oral denial. Furthermore, defense counsel offered no contemporaneous objections to the in-court identifications.

Second, contrary to defendant's assertion, the victim did make an out-of-court photo identification prior to trial, as discussed above.

Third, the record is devoid of information regarding the racial make-up of the courtroom audience. Defendant does not cite to any place in the record that supports his allegation that he was the only African-American in the courtroom at the time of the in-court identifications. When no evidence is preserved in the record for review, we are precluded from considering the issue. State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

Nevertheless, assuming the trial court did deny defendant's motion, and assuming that defendant was the only African-American male in the courtroom, denial of the motion was not an abuse of discretion. A trial court has the inherent power to supervise and control its own court proceedings. State v. Cazes, 875 S.W.2d 253, 260 (Tenn. 1994); State v. Bragan, 920 S.W.2d 227, 239 (Tenn. Crim. App. 1995). Defendant has failed to demonstrate prejudice.

This issue is without merit.

1999 WL 787524 at **3, 4 (emphasis added).

Given these undisputed factual findings the Court concludes that the state court's application of Biggers is neither unreasonable nor contrary to federal law.

## 2. Denial of Right to a Speedy Trial

9

As to Petitioner's claim that the State denied him his Sixth Amendment right to a speedy

trial, the State appellate court found as follows:

> Defendant's brief summarily states that he experienced a "lengthy pre-trial detention," that the "[s]tate was to blame for the delay," and "[defendant] asserted his right prior to his indictment." His amended motion for new trial makes reference to the trial court's denial of a speedy trial motion. However, the record contains no such motion or order of denial.
>
> It is the appellant's duty to have prepared an adequate record in order to allow a meaningful review on appeal. Tenn. R. App. P. 24. When no evidence is preserved in the record for review, we are precluded from considering the issue. Roberts, 755 S.W.2d at 836.
>
> Nevertheless, assuming defendant timely asserted his right to a speedy trial, he must show he was prejudiced by the delay. State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994). The most important inquiry with regard to prejudice is whether the delay impaired the defendant's ability to prepare a defense. Id.
>
> No more than fourteen months passed between defendant's arrest and trial. Defendant attributes the loss of the victim's underwear and "exculpatory" license number information to this delay. Furthermore, he claims that Detective Baxter caused the prejudicial delay of the TBI fiber analysis. We find defendant's arguments uncompelling.
>
> First, testimony at trial showed that the victim's underwear never came into the state's possession, but was misplaced by the hospital that performed the MLE. Second, additional testimony showed the underwear might have proven detrimental to defendant, since a fluorescent light test revealed the possible presence of semen on them. Third, the license information related to law enforcement, both correct and incorrect, was sufficient to identify defendant as a suspect. And finally, as discussed above, defendant was able to prepare for the presentation of fiber evidence.
>
> Defendant has failed to demonstrate that he suffered any prejudicial delay between arrest and trial.
>
> This issue is without merit.

1999 WL 787524 at **5, 6.

Among the rights under the Sixth Amendment is the right to a speedy trial, "fundamental"

10

right, that is, "it is one of the most basic rights preserved by our Constitution." Klopter v. North Carolina, 386 U.S. 213, 226 (1967). The only remedy for a speedy trial violation is dismissal of the indictment. Barker v. Wingo, 407 U.S. 514, 522 (1972). See also Strunk v. United States, 412 U.S. 434, 436 (1973). The ultimate responsibility for honoring this right is with the State. Id. at 436. The right to a speedy trial is different from other rights provided by the Constitution for the protection of the accused. Barker, 407 U.S. at 519. Society also possesses an interest in providing a speedy trial to the criminally accused separate from, and at times in opposition to, the interests of the accused. Id.

Delay often works to the defendant's advantage. Id. at 521. "[T]he right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." Barker, 407 U.S. at 521.

In Barker, the Supreme Court adopted a balancing test, by which the Court weighed the conduct of both the prosecutor and the defendant. 407 U.S. at 530. Generally, in applying the balancing test, a court must weigh four factors: 1) the length of delay; 2) the reason for the delay; 3) whether and how the defendant asserted the speedy trial right; and 4) the amount of prejudice suffered by the defendant. Id. at 533. No single factor is determinative. Id.

> We regard none of the four factors ... as either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

Id.

Where as here, the delay is more than a year, a presumption of unreasonable delay arises

11

that requires a consideration of the other Barker factors. Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992).

Circumstances that will wholly justify the government's delay in bringing a defendant to trial are the following: the government's need for additional time to collect witnesses against the accused; to oppose any pretrial motions submitted by the defendant; and to locate a defendant attempting to evade capture. Barker, 427 U.S. at 531 The court should "attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." Id. There were pretrial motions filed before Petitioner's trial and there is not any evidence of deliberate delay by the State.

The third factor considers whether and to what degree the defendant asserted his speedy trial rights. The defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Barker, 407 U.S. at 531-532. A defendant's failure to assert the right, on the other hand, will make it difficult for a defendant to prove that he was denied a speedy trial, Barker, 407 U.S. at 532. "[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates ... that the defendant did not want a speedy trial." Id. at 536. Here, Petitioner never requested a speedy trial and this factor weighs heavily against him.

Prejudice to the defendant, the final factor, is assessed in light of the defendant's interests, which the Speedy Trial Clause was designed to protect. Id. at 532. Three such interests are the following: 1) preventing oppressive pretrial incarceration; 2) minimizing the anxiety and

12

concern of the accused; and 3) limiting the possibility that the defense will be impaired. Id. Of these, the most serious is the last, because the inability of a defendant to prepare adequately his case skews the fairness of the entire system. Id. Yet, the Supreme Court in United States v. MacDonald, 456 U.S. 1, 8 (1982), opined that the Sixth Amendment right is **not** primarily intended to prevent prejudice to the defendant caused by the passage of time. Rather that interest is protected primarily by the Due Process Clause and the statutes of limitation. Id. The Sixth Circuit requires a showing of "substantial prejudice." United States v. DeClue, 899 F.2d 1465, 1471 (6th Cir. 1990).

Here, as the state appellate court found, Petitioner failed to demonstrate with any particularity how he was prejudiced. Based upon the evidence before the state courts' ruling is not unreasonable given the lack of showing any arguable prejudice.

### 3. Ineffective Assistance of Counsel Claims

#### a. Failure to Call Witnesses

As to his counsel's failure to call an alibi witness or to call Petitioner as a witness at his trial, the Tennessee Court of Criminal Appeals made findings and ruled on these claims on Petitioner's post-conviction appeal. As to the failure to call Delores Grayson, the alibi witness, that Court found:

> At the post-conviction hearing, Delores Grayson testified that she hired the petitioner to be a security guard for the video store where she was a manager. She said the day of the crime, September 8, 1994, was the petitioner's birthday. She said that on that day, she called the petitioner before 9:00 a.m. and asked if he could open the store because she had to run an errand. She said the store normally opened at 9:00 a.m. She said the petitioner was at home when she talked to him. She said she went to Hickory Hollow Mall to buy the petitioner a birthday present. She said that on her way to the store, she stopped to get her car washed and that the car's battery died at the carwash. She said she called the petitioner at the video

13

store around 9:30 a.m. and asked him to come to the carwash to jumpstart her car. She said the store was one-half mile from the carwash, and the petitioner arrived in less than five minutes. She said that they returned to the video store and that the petitioner remained at the store until 2:00 or 3:00 p.m.

Ms. Grayson testified that she talked to the petitioner's trial attorney and told him where the petitioner was the morning of September 8, 1994. She said that she was willing to testify and that the attorney knew how to contact her. She said the petitioner's attorney told her if she testified the state may ask her about her brother's criminal history. She said she went to the petitioner's trial but the petitioner's attorney told her he would not need her testimony. She said that the petitioner was a friend of the family and that she had been romantically involved with the petitioner one time. She said that in 1994, the petitioner was only a friend.

On cross-examination, Ms. Grayson stated that her video store was located at 107 Lafayette in south Nashville. She acknowledged the petitioner worked at Perry's Market when she first met him but denied he was working there on September 8, 1994. She acknowledged that the police searched the petitioner's house and that the police spoke to the landlord who owned the house and had a close relationship with the petitioner. She acknowledged the landlord worked at Perry's Market but denied that the petitioner still worked there as the landlord had told the police. She admitted she did not go to the police on September 9, 1994, when she found out the petitioner was charged with the crime. She said the first time she came forward with the alibi was approximately six months after the incident when she told the petitioner's attorney. She denied knowing the petitioner had been previously convicted of rape.

*   *   *

Counsel testified that he spoke to Ms. Grayson about a possible alibi. He said he could not remember specifically what she had told him but what she said was inconsistent with what the petitioner had told him. He said the petitioner wanted Ms. Grayson to be called as an alibi witness. He said he asserted an alibi in the petitioner's discovery response. He said Ms. Grayson was inconsistent about the times and did not provide the alibi the petitioner said she would provide. He said that what Ms. Grayson told him was inconsistent with both the facts of the case and with what the petitioner had told him. He said that he did not believe Ms. Grayson was credible and that he did not believe she was telling the truth. He said he told the petitioner he believed Ms. Grayson's testimony would "do more harm than good" at the trial. He said he did not feel that he could ethically call Ms. Grayson as a witness but said he would not say she was lying.

14

* * *

[Counsel] said the decision not to call Mr. Grayson . . . [was] ultimately made by the petitioner [Counsel] acknowledged that in a motion for new trial, he alleged he was ineffective for failing to call Ms. Grayson as a witness. . . .

On cross-examination, counsel acknowledged that the information provided by the petitioner was not the same as the information provided by Ms. Grayson. He acknowledged the petitioner's alibi placed the petitioner in the same part of town where the crime had occurred and left enough time for him to commit the crime and return to the store. He acknowledged Ms. Grayson's statement that the petitioner worked with her at the video store was inconsistent with the information the police collected from the petitioner about his employment. He acknowledged that the information about one of the witnesses not being able to identify the petitioner in the photograph lineup was presented to the jury. He acknowledged that four people were able to make "some semblance" of an identification of the petitioner. He acknowledged that one of the witnesses provided the police with the license plate number and a description of the car the perpetrator used and that the petitioner owned a car matching the description with a license plate number one letter off from that reported by the witness.

* * *

The petitioner testified that he told his attorney about Ms. Grayson, that he heard her testimony in court, and that her testimony was the same as the information he had provided to his attorney. He said he told his attorney several times before trial that Ms. Grayson could verify where he was and that he wanted her to testify. He said he never had any discussions with his attorney about any conflicts in the testimony or about the petitioner's or Ms. Grayson's credibility.

* * *

Counsel testified that Ms. Grayson's statements were in conflict with the facts of the case and the petitioner's statements. He said Ms. Grayson's testimony that the petitioner worked with her at a video store was inconsistent with the petitioner's statement to police that he worked at Perry's Market. He said that he did not believe Ms. Grayson was credible and that he did not feel he could ethically call her as a witness. We conclude the record does not preponderate against the trial court's finding that counsel's failure to use Ms. Grayson as a witness was not deficient performance.

Id. at **2, 3, 4, 9 (emphasis added).

As to trial counsel's failure to call Petitioner as a witness at trial, the Tennessee appellate

15

court found as follows:

> Counsel testified that. . . he talked to the petitioner about whether or not the petitioner wanted to testify. He said they talked about the petitioner's extensive criminal record and the facts of the case. He acknowledged that the petitioner may have had one or two prior rape convictions and that the petitioner's criminal record was one of the factors he considered in recommending that the petitioner not testify. He said he recommended the petitioner not testify but told the petitioner it was the petitioner's decision to make. He said he did not believe the petitioner was credible because the petitioner was inconsistent in his statements and would not do well on cross-examination. He said the decisions not to call Ms. Grayson or the petitioner as witnesses were ultimately made by the petitioner. He acknowledged that in the motion for a new trial, he alleged he was ineffective for failing to call Ms. Grayson as a witness. He acknowledged the defense called no witnesses to explain the petitioner's whereabouts at the time of the crime. He acknowledged he did not file a motion in limine to exclude the petitioner's prior convictions, but he said he would have advised the petitioner not to testify even if the prior convictions were excluded.

*   *   *

> . . . [Petitioner] said he never had any discussions with his attorney about any conflicts in testimony or about the petitioner's or Ms. Grayson's credibility. He said that he talked to his attorney about testifying and that his attorney felt it was not in his best interest to testify because the state would bring in his prior record. He said the only prior felony conviction he had was for rape. He <u>said that as a result of what his attorney told him, he decided not to testify.</u> He said his attorney never told him that his statements were inconsistent with the facts.

*   *   *

> The petitioner contends that he received the ineffective assistance of counsel because his trial counsel prevented the petitioner from testifying at the trial. He asserts counsel advised him not to testify because of a prior rape conviction and failed to file a motion in limine. He contends that based on the attorney's belief that the rape conviction would come in, he chose not to testify. The state contends the petitioner acknowledged that he made the final decision not to testify and that the attorney had concerns about his prior rape conviction becoming a factor. The state asserts the attorney had concerns about the petitioner's credibility and was not ineffective for advising him not to testify. The state asserts the petitioner failed to show he was prejudiced by his decision not to testify. The trial court found that the "decision to have the petitioner refrain from testifying at trial seems prudent considering the circumstances." The trial court said the attorney "was not ineffective for preventing the petitioner from testifying."

16

At the post-conviction hearing, the attorney testified that "we talked about his extensive criminal record, the facts, and I told him it would be his decision but I made a recommendation I didn't feel like he should testify, but that was his decision to make." He said he advised the petitioner not to testify because he did not believe the petitioner was credible or would do well on cross-examination with his inconsistent statements. The petitioner testified that he had one prior rape conviction and that he decided not to testify based on his attorney's advice. We believe that the record reflects that although counsel advised the petitioner not to testify, counsel did not "prevent" the petitioner from testifying. We conclude that the petitioner failed to prove by clear and convincing evidence that counsel's advice for the petitioner not to testify was improper, and the petitioner is not entitled to relief on this issue.

Thurmond, 2006 WL 680924 at **3, 4 and 10 (emphasis added).

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to

17

plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id. at 690-91.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691 (emphasis added). Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631,

18

639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000 WL 712376, at *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams, 529 U.S. at 390-91. In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

Under Strickland, strategic decisions of counsel do not qualify for claims of ineffectiveness. Thus, counsel's decision not to call Grayson based upon his assessment of the facts and her credibility as a witness cannot be grounds for habeas relief. The Petitioner's testimony and the state courts' finding establish that Petitioner made the decision not to testify. Petitioner's counsel advice to Petitioner about him testifying is reasonable given Petitioner's prior rape convictions. The Court concludes the state courts' decisions on these claims are neither unreasonable nor contrary to federal law.

### b. Counsel's Failure to Object

Petitioner's next claim is that his trial counsel's failed to object to the State's introduction of fibers from the victim's clothing and hearsay testimony. The state courts found as to the fiber evidence as follows:

Detective Baxter secured a search warrant for [the petitioner's] residence where he

19

collected items of clothing thought to be associated with the rape of [the victim].
Analysis of that clothing by the Tennessee Bureau of Investigation (TBI) crime
laboratory revealed fiber on the victim's clothing that was consistent with a fiber
on the [petitioner's] clothing.

The petitioner contends that he received the ineffective assistance of counsel
because his attorney failed to exclude all physical evidence recovered by the
hospital employee. The petitioner asserts Nurse Weingartner collected the victim's
pants, blouse, and panties and placed the items, along with the rape kit, in a
locked safe in the hospital. The petitioner asserts that when a detective picked the
items up at the hospital, the panties were missing. The petitioner contends counsel
should have sought to suppress the victim's clothes because of a break in the chain
of custody. The petitioner asserts the failure to have the clothes suppressed
allowed the state to argue there was a link between fibers found on the petitioner's
and victim's shirts.

The Tennessee Court of Criminal Appeals ruled on this claim as follows:
The petitioner's counsel testified he had practiced law for thirty-four years and
practiced criminal law for much of that time. He said he represented the petitioner
at the trial but did not represent him on appeal. He said the victim did not speak
English, but he could not recall if one of the witnesses acted as an interpreter or if
someone else did during the photograph lineup. He said he did not recall how the
victim's clothes were packaged at the hospital or if the victim's panties were lost.
He acknowledged that fibers found on the petitioner's shirt were consistent with
fibers found on the victim's shirt. He acknowledged he did not file a motion to
suppress the fiber evidence taken from the shirt after the panties were lost.

\*   \*   \*

The facts from the direct appeal show that the victim identified the petitioner as
the man who attacked her. Ms. Rivera, who chased the petitioner from the motel
room, also identified the petitioner as the attacker. Ms. Rivera gave the license
plate number, 099 JKF, and a description of the attacker's car to the police. The
description of the car matched the petitioner's car, and the license plate number
was one letter different from the petitioner's license plate number, 099 JKB. The
evidence identifying the petitioner is substantial. We conclude the petitioner has
failed to show that a reasonable probability exists that the result of his trial would
have been different had the fiber evidence been excluded.

Thurmond, 2006 WL 680924 at \*\*2, 3, 7, 8 (emphasis added).

The state appellate court adopted the trial court's findings that because Petitioner's

20

identity and presence at the rape scene was established by eyewitnesses and included a witness

whose testimony matched Petitioner's vehicle's license plate to the license plate of the

perpetrator of the rape. Given the "the wealth of evidence" against this Petitioner, the Tennessee

appellate court could reasonably conclude that Petitioner could not be prejudice by his trial

counsel's failure to object to this fiber evidence. Id. at *8. This holding is neither contrary to nor

an unreasonable application of clearly established federal law and was based on a reasonable

determination of the facts in light of the evidence in the record.

Petitioner's next claim is his counsel's failure to object to as hearsay Baxter's testimony

about the victim's and Rivera's identification on him and to Rivera's interpretation of the

victim's identification of him. Id. at *8. On cross-examination, Petitioner acknowledged that all

of the witnesses that identified the petitioner at the trial were cross-examined by his attorney but

said that he wished they had been more effectively cross-examined. Id. at *4.

As to counsel's failure to object to witnesses' identification of Petitioner on direct appeal,

the State appellate court found:

> Detective Baxter interviewed the victim and several witnesses. Based upon the
> physical descriptions and the owner registration information derived from the
> license number given by Rivera, Baxter put together a photo lineup which
> included the [petitioner]. [The victim], Lourdes Rivera, and Lynn King identified
> [the petitioner] as the perpetrator from that lineup.
>
> [Petitioner] acknowledged all of the identification sheets that were filled out by
> witnesses were read into the record and introduced as exhibits at the trial. He
> admitted his belief that the photograph identification should not come in was
> because the person who acted as an interpreter for the victim was also a witness.

Thurmond, 1999 WL 787524 at *2.

On his post-conviction appeal, the same State appellate court found on this claim that:

21

The petitioner contends he received the ineffective assistance of counsel because counsel failed to object to Detective Baxter's testimony that the victim identified the petitioner in a photograph lineup. The petitioner asserts that because the victim did not speak English and Detective Baxter did not speak Spanish that Detective Baxter had a witness, Ms. Rivera, act as an interpreter during the photograph lineup. He asserts the identification made by Ms. Rivera to Detective Baxter was hearsay because it was not given by the victim. The petitioner contends if the attorney had objected, the jury would not have heard evidence that the victim identified the petitioner in a photograph lineup.

The state contends the petitioner failed to prove that his attorney was ineffective or that he was prejudiced. The state asserts that three other witnesses identified the petitioner before the trial and that the eye witness identification evidence was substantial.

The trial court found the petitioner failed to prove he was prejudiced by his attorney's failure to object to hearsay. It stated:

> [t]he victim, along with two other co-workers, identified the petitioner as the perpetrator of the offenses, both in and out of court. An employee from another nearby motel also testified as to having seen the petitioner roaming the halls of her place of employment. Furthermore, the aforementioned license plate information alone provided the prosecution with quite inculpatory evidence. Considering the wealth of evidence in existence against the petitioner, it does not appear as though any inaction on behalf of counsel with regard to objections to this testimony would have prejudiced the petitioner in this matter.

We conclude the record does not preponderate against the trial court's findings, and the petitioner is not entitled to relief on this issue.

Thurmond, 2006 WL 680924 at **8-9.

For the reasons stated on counsel's failure to object to fiber evidence, the Court concludes that the state courts' findings of the lack of prejudice by these cited omissions of trial counsel are not unreasonable nor clearly contrary to applicable law. Thus, this claim is without merit and should be dismissed.

22

### 4. Insufficiency of the Evidence

Petitioner's next claim is that the State's evidence was insufficient to support his

conviction. On direct appeal, the Tennessee Court of Criminal Appeals rejected this claim:

> Nonetheless, contrary to defendant's assertion, the victim did make positive photo lineup and in-court identifications of defendant, as did Lourdes Rivera and Lynn King. The victim identified defendant as the man who raped and sexually assaulted her at gunpoint; Rivera identified defendant as the man she pursued away from the hotel room where Majano was raped; and King identified defendant as the man she witnessed lingering at the nearby Days Inn. The license plate number provided by Rivera linked the type of car driven by the assailant to a car registered in defendant's name. Other eyewitnesses gave consistent descriptions of defendant's physical features and clothing.
>
> Taken in the light most favorable to the state, this evidence is more than sufficient to support the defendant's convictions.

Thurmond, 1999 WL 787524 at *3.

For a Fourteenth Amendment claim based upon insufficient evidence, in Jackson v.

Virginia, 443 U.S. 307 (1979), the Supreme Court set forth the standard for reviewing the legal

sufficiency of the evidence in support of a conviction.

> ...[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to `ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon `jury' discretion only to the extent necessary to guarantee the fundamental protection of due

process of law.

443 U.S. at 318-19 (emphasis added with footnotes and citations omitted).

Circumstantial evidence, if sufficient to establish an element of the offense, satisfies the constitutional requirement of due process, <u>Wiley v. Sowders</u>, 669 F.2d 386, 390 (6th Cir. 1982) (per curiam), and such evidence need not remove every reasonable hypothesis except that of guilt. <u>Tilley v. McMackin</u>, 989 F.2d 222, 225 (6th Cir. 1993). Uncorroborated accomplice testimony is sufficient to support a conviction under the United States Constitution. This due process guarantee of sufficiency of the evidence extends only to the elements of the crime, not to the state's burden to prove the absence of an affirmative defense, unless the state has made the absence of a defense an element of the crime. <u>Allen v. Redman</u>, 858 F.2d 1194, 1196-98 (6th Cir. 1988). At that point, sufficiency of evidence on the issue will be relevant. <u>Id.</u> at 1197-98.

Hearsay evidence can be used to support a state conviction provided it qualifies as an exception to the hearsay rule. <u>White v. Illinois</u>, 502 U.S. 346, 355-57, 356 n.8 (1992). The standard is whether the hearsay evidence carries sufficient guarantees of trustworthiness. <u>Curro v. United States</u>, 4 F.3d 436, 437 (6th Cir. 1993). It is unnecessary to establish the unavailability of the declarant, if the hearsay statements were made in a prior court proceeding. <u>United States v. Inadi</u>, 475 U.S. 387, 394 (1986). Inadmissible hearsay testimony, however, of a non-testifying codefendant that clearly implicates the defendant cannot be admitted against the defendant as this would violate his right to confront his witnesses. <u>Richardson v. Marsh</u>, 481 U.S. 200, 207-08 (1987).

An issue concerning admissibility of evidence does not arise to a level of constitutional magnitude unless it can be viewed as so egregious that petitioner was denied a fundamentally fair

24

trial. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988). To warrant habeas relief, the excluded evidence must be critical and "tend to exculpate" the petitioner and also must contain "persuasive assurances of trustworthiness." Turpin v. Kassulke, 26 F.3d 1392, 1396 (6th Cir. 1994). Otherwise, a question of purely state law rarely serves as a basis for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62 (1991). "Today, we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68. Rulings by a state's highest court on state law issues are binding on the federal courts. Wainwright v. Goode, 464 U.S. 78, 84 (1983) (per curiam). The Court is bound by decisions of an intermediate state appellate court unless the district court is convinced that the highest state court would decide the issue differently. Olsen v. McFaul, 843 F.2d 918, 929 (6th Cir. 1988).

Given the multiple witnesses who identified Petitioner as the rapist and the identification of his vehicle at the rape scene as well as the corroborating physical fiber evidence, this Court concludes that the state courts' ruling on this claim is neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court. These rulings were based on a reasonable determination of the facts in light of the evidence in the record. Thus, this claim is without merit.

### B. Defaulted Claims

Respondent contends that Petitioner's remaining claims are procedurally defaulted as they were found to be waived by the state courts, were not presented to the state courts, or were not presented as federal law claims in the state courts. Respondent also contends that Petitioner cannot justify his failures to present these claims by a showing of cause and prejudice.

As to Petitioner's claim that his counsel was ineffective for failing to remove a

25

prospective juror that Petitioner wished to strike, the state courts rejected this claim because

Petitioner failed to preserve this claim on his state post-conviction petition and hearing.

Thurmond, 2006 WL 680924 at *7. Petitioner's photographic lineup claim was raised on his

direct appeal, but the Tennessee Court of Criminal Appeals ruled it had not been preserved at

trial for review. Id. at *4. Petitioner's due process claim based upon the trial court's admissions

of fiber evidence from the victim's clothing was presented to the state courts under a state law

theory. Petitioner's claim under Blakely was not presented to the state courts. Petitioner's jury

instruction and sentencing claims about the state's failure to provide him adequate notice of its

intent to sentence him as a multiple rapist were presented to the state courts under a state law

theory of Tennessee rather than a federal due process claim. (Docket Entry No. 21, Attachment

thereto, Addendum 1, Document I at pp. 19-22; Docket Entry No. 22, Attachment thereto). See

also Thurmand v. Carlton, 202 S.W.3d 131, 132 (Tenn. Ct. Crim. App. 2006).

      Petitioner must exhaust all claims in state court before asserting those claims in a federal

habeas action. Wilwording v. Swenson, 404 U.S. 249, 250 (1971). A habeas petitioner must

present claims to the state courts as federal constitutional issues rather than state law issues.

Picard v. Connor, 404 U.S. 270, 275 (1971). The facts and federal legal theory raised in a

petition for the federal writ of habeas corpus must have been "fairly presented" to the state courts.

Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam) (citing Picard and Anderson v.

Harless, 459 U.S. 4, 6 (1982) (per curiam) ("It is not enough that all the facts necessary to

support the federal claim were before the state courts or that a somewhat similar state-law claim

was made." "[A] federal habeas petitioner ... [must] provide the state courts with a 'fair

opportunity' to apply controlling legal principles to the facts bearing upon his constitutional

26

claim.") A claim supported only by citation to state law is insufficient to present a federal claim, even if the cited state decision restated an analysis of federal law. Harless, 459 U.S. at 7-8 n.3. The state courts must be provided with a "fair opportunity" to apply controlling legal principles to the facts bearing upon the petitioner's constitutional claim. Id. at 6.

"[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). As a matter of federal law, to avoid procedural default, federal law requires a federal habeas petitioner in Tennessee to present his federal claims to the Tennessee Court of Criminal Appeals. Covington v Mills, 110 Fed. Appx. 663, 666 (6th Cir. 2004).

The "Procedural Default Doctrine" bars consideration of a federal claim in a habeas action that was not presented to the state court or was decided on state law grounds.

> [t]his Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would, therefore, be advisory. . .
>
> ***
>
> . . . the doctrine applies also to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on an independent and adequate state procedural ground.

Coleman v. Thompson, 501 U.S. 722, 729-30 (1992) (emphasis added and citations omitted).

Yet a presumption of no procedural default arises if the state court decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the

27

adequacy and independence of [the] state law ground is not clear from the face of the opinion."
Id. at 735. Further, this doctrine applies only to "firmly established" and regularly followed state
procedural rules. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). Here, Respondent cites Tenn.
Code Ann. § 40-30-102 (a) and (c) that has a one year limitation period that has long since
passed for presenting any of this claim and State precedent on appellate waiver.

The standard analysis for procedural default was set forth by the Sixth Circuit in the oft-
cited Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986):

> When a state argues that a habeas claim is precluded by the petitioner's failure to
> observe a state procedural rule, the federal court must go through a complicated
> analysis. First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with the
> rule.
>
> ***
>
> Second, the court must decide whether the state courts actually enforced the state
> procedural sanction.
>
> ***
>
> Third, the court must decide whether the state procedural forfeiture is an
> "adequate and independent" state ground on which the state can rely to foreclose
> review of a federal constitutional claim.... This question generally will involve an
> examination of the legitimate state interests behind the procedural rule in light of
> the federal interest in considering federal claims.

Maupin, 785 F.2d at 138 (citations omitted).

### Noncompliance with Applicable State Rules

Any reliance on a state rule must be express, i.e., supported by citation to a state law or
court rule as well as a showing of how the facts of the case violate that rule. Walker v. Engle,
703 F.2d 959, 966 (6th Cir. 1983). Here, the Tennessee Appellate Court cited its precedent that
claim that should have been presented on direct appeal are deemed waived for post-conviction

28

proceedings. Thurmond, 2006 WL 680924 at *7. Respondent also relies upon Tennessee's statute of limitations to bar these defaulted claims. Tenn. Code Ann. § 40-30-102(a) and (c). As to Petitioner's new claims in this action, if there is no state court determination of whether a petitioner's claims are procedurally defaulted under state law, then the Court is to consider whether the state court would bar the claims if presented to them. Engle v. Isaac, 456 U.S. 107, 125-26 n.28 (1982). As discussed infra, the Court concludes that the Tennessee courts would conclude that these claims are time barred.

## "Firmly Established" and "Regularly Followed" State Rules

To qualify for the procedural default rule, the cited state law also must be a firmly established and regularly followed state practice. Ford, 498 U.S. at 423-24. In Hutchison v. Bell, 303 F.3d 720 (6th Cir. 2002), the Sixth Circuit analyzed Tennessee's statute of limitations statute on post-conviction petitions and its Burford exception in a procedural default analysis:

> Hutchison argues that Tennessee courts' willingness to excuse procedural default pursuant to Burford demonstrates that state procedural rules are not regularly followed in the context of later-arising claims.

> Nevertheless, we agree that Tennessee's due process exception does not render this provision inadequate. Tennessee's due process exception does not grant unfettered discretion to state courts in applying procedural default rules. Although Tennessee courts will often permit the hearing of an untimely claim, the decision is confined by the due process standards delineated in Burford and its progeny. The Tennessee courts consistently enforce a procedural scheme that encompasses both the one-year limitations period and a court-recognized procedure for tolling that statute when specific due process grounds are presented....

> In Hannah v. Conley, 49 F.3d 1193 (6th Cir. 1995) (per curiam), this Court found that the then-applicable three-year statute of limitations for post-conviction petitions in Tennessee was regularly applied and would bar presentation of an unexhausted claim. Id. at 1197. The Hannah court noted that the language of the statute was mandatory in that it provided that a claimant "must" petition within three years or his claim "shall" be barred. Id. at 1196. The current one-year

29

statute of limitations contains the same mandatory language.  See T.C.A. § 40-30-202(a).

> Although the previous cases did not present a <u>Burford</u> type later arising claim, we do not find that the state's <u>Burford</u> tolling rules command a different result. . . .

> Given that tolling under <u>Burford</u> is not discretionary and given this Circuit's reluctance to discourage state courts from exhibiting caution before applying procedural default rules in capital cases, we conclude that the <u>Burford</u> exception does not render Tennessee's procedural rules inadequate.

<u>Id.</u> at 738-739. (footnotes omitted).

The Sixth Circuit also ruled in <u>Hutchinson</u> that despite the <u>Burford</u> exception to the Tennessee timeliness rule, <u>Burford</u> was not a separate constitutional claim.  <u>Id.</u> at 740-41. In a word, <u>Hutchinson</u> found the Tennessee limitations rule to constitute a firmly established and regularly followed state law. Thus, the Court concludes that Tennessee's limitations statute is an independent and regularly enforced state rule.

### Adequacy of the State Rule

The Supreme Court recognized the following state interests as constituting adequate grounds for state procedural rules.

> The possible avoidance of an unnecessary trial or of a retrial, the difficulties of making factual determinations concerning grand juries long after the indictment has been handed down and the grand jury disbanded, and the potential disruption to the numerous convictions of finding a defect in a grand jury only after the jury has handed down indictments in many cases.

<u>Coleman</u>, 501 U.S. at 745-46.

Another reason to support a finding of adequate state rules was decided in <u>Frances v. Henderson</u>, 425 U.S. 536 (1976), where the Supreme Court enforced a state rule that promoted finality, noting a comparable federal rule.

Plainly the interest in finality is the same with regard to both federal and state

30

prisoners. ... There is no reason to ... give greater preclusive effects to procedural default by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.

425 U.S. at 541-42.

Procedural rules such as statutes of limitations have been found to be independent and adequate. In <u>Coleman</u>, the Supreme Court upheld a procedural rule that bars consideration of a federal claim for failure to meet state law requirements for timely appeals. 501 U.S. at 750-51. In <u>Brown v. Allen</u>, 344 U.S. 443 at 485-86 (1953), the Court also applied the procedural default rule to a state rule that placed time limits on appellate rights. <u>Accord</u> <u>Reed v. Farley</u>, 512 U.S. 1277 (1994) (denying writ due to waiver of delay under the Interstate Agreement on Detainers by failure to object at trial and to establish prejudice). Moreover, State rules that failure to object at trial to preserve a claim is also an adequate State rule. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87, 91 (1977).

The Court concludes that Tennessee's cited rules are adequate for procedural default purposes and are regularly enforced.

### Cause and Prejudice

Given these procedural defaults, Petitioner must establish cause and prejudice to excuse such non-compliance. The "cause" for the default must be external to the petitioner and must otherwise be attributable to the state.

> . . . <u>we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.</u> Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, <u>see</u> <u>Reed v. Ross</u>, 468 U.S., at 16, or that `some interference by officials,' <u>Brown v. Allen</u>, 344 U.S. 443,

31

486 (1953), made compliance impracticable, would constitute cause under this standard.

Carrier, 477 U.S. at 488 (emphasis added).

An often cited factor to establish cause for a procedural default is the petitioner's state counsel's failure to raise an issue or to comply with a state law to present a given habeas claim. Inadequate counsel can prove cause, but only if counsel's conduct violates Sixth Amendment standards and counsel's inadequate conduct has been presented to the state courts. The Supreme Court emphasized in Coleman that mere attorney error cannot be cause and cannot be attributable to the state.

> Attorney ignorance or inadvertence is not `cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must `bear the risk of attorney error.' ... Attorney error that constitutes ineffective assistance of counsel is cause, however ... as Carrier explains, `if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the state.' [quoting Carrier, 477 U.S. at 488]. In other words, it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, i.e., `imputed to the state.'

Coleman, 501 U.S. at 753-54 (emphasis added).

As noted earlier, the standard for cause attributable to counsel is the constitutional standard under the Sixth Amendment for attorney performance, i.e., whether counsel provided "reasonably effective assistance," Carrier, 466 U.S. at 687, and counsel's performance must be both inadequate and prejudicial to the defense.

For the reasons stated on Petitioner's ineffective assistance of counsel claims, the Court concludes that Petitioner has not demonstrated cause for his trial counsel's failures to present his defaulted claims to the State courts. This same rationale leads the Court to conclude that

32

Petitioner has not established prejudice for these defaults. To the extent, state post-conviction counsel's omissions caused claims not to be presented, such omissions cannot establish cause. Coleman, 501 U.S. at 756-57.

To be sure, the procedural default doctrine may not preclude federal habeas review if failure to hear the petitioner's defaulted claim would result in a fundamental miscarriage of justice or would prove his actual innocence of the offense. Sawyer v. Whitley, 505 U.S. 333, 339 (1992). If there were an error-free trial and the actual innocence claim was based upon newly discovered evidence, then the petitioner's showing of actual innocence must be "truly persuasive" or "extraordinarily high" to show a "constitutionally intolerable event" as well as the lack of an available state remedy. Herrera v. Collins, 506 U.S. 390, 427 (1993). These is not any showing of a miscarriage of justice here. Petitioner's Brady claims about lose of evidence and false testimony are wholly contradicted by the Tennessee appellate court's express findings. Thurmond, 1999 WL 787524 at *6.

Actual innocence claims must be substantive or factual, not procedural, e.g., a claim of innocence based on ineffective assistance of counsel or a prosecutor's failure to disclose Brady material is procedural and subject to the procedural default doctrine. Schlup v. Delo, 513 U.S. 298 (1995). As the Court in Schlup explained, "if there were no question about the fairness of the criminal trial, a Herrera type claim would have to fail unless the federal habeas court is convinced that those new facts unquestionably establish [the petitioner's] innocence. On the other hand, if the habeas court were merely convinced that those new facts raise sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error [the petitioner's] threshold showing

33

of innocence would justify a review of the merits of the constitutional claims." Id. at 317.

Where the claim of actual innocence is premised upon a trial with error, then a different and

lesser standard of judicial review of "sufficient doubt" applies. As the Supreme Court stated in

Schlup.

In Schulp, the Court addressed the standard of proof that a federal petitioner would have

to show to establish the actual innocence exception to the procedural default rule in non-capital

cases. In contrast, for cases other than death penalty cases, the Court in Schulp applied the

standard in its earlier Carrier decision stating,

> [W]e hold that the Carrier "probably resulted" standard rather than the more
> stringent Sawyer standard must govern the miscarriage of justice inquiry when a
> petitioner who has been sentenced to death raises a claim of actual innocence to
> avoid a procedural bar to the consideration of the merits of his constitutional
> claims.

> The Carrier standard requires the habeas petitioner to show that "a constitutional
> violation has probably resulted in the conviction of one who is actually innocent."
> 477 U.S. at 496, 106 S.Ct. at 2649-2650. To establish the requisite probability,
> the petitioner must show that it is more likely than not that no reasonable juror
> would have convicted him in the light of the new evidence. The petitioner thus is
> required to make a stronger showing than that needed to establish prejudice. At
> the same time, the showing of "more likely than not" imposes a lower burden of
> proof than the "clear and convincing" standard required under Sawyer. The
> Carrier standard thus ensures that petitioner's case is truly "extraordinary,"
> McCleskey, 499 U.S. at 494, 111 S.Ct. at 1470, while still providing petitioner a
> meaningful avenue by which to avoid a manifest injustice.

> Carrier requires a petitioner to show that he is "actually innocent." As used in
> Carrier, actual innocence is closely related to the definition set forth by this Court
> in Sawyer. To satisfy the Carrier gateway standard, a petitioner must show that it
> is more likely than not that no reasonable juror would have found petitioner guilty
> beyond a reasonable doubt.

> Several observations about this standard are in order. The Carrier standard is
> intended to focus the inquiry on actual innocence. In assessing the adequacy of
> petitioner's showing, therefore, the district court is not bound by the rules of
> admissibility that would govern at trial. Instead, the emphasis on "actual

34

innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial. Indeed, with respect to this aspect of the Carrier standard, we believe that Judge Friendly's description of the inquiry is appropriate: the habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."

The consideration in federal habeas proceedings of a broader array of evidence does not modify the essential meaning of "innocence." The Carrier standard reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068. Indeed, even in Sawyer, with its emphasis on eligibility for the death penalty, the Court did not stray from the understanding that the eligibility determination must be made with reference to reasonable doubt. Thus, whether a court is assessing eligibility for the death penalty under Sawyer, or is deciding whether a petitioner has made the requisite showing of innocence under Carrier, the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence.

Id. at 326-28.

Here, for the same reasons stated on the Petitioner's sufficiency of the evidence claim, the Court concludes that Petitioner has not met the standard under the actual innocence doctrine to excuse his procedural defaults.

For these collective reasons, the Court concludes that the petition for the writ of habeas corpus should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of February, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge

35